UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COZINE STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | 02 C 3778 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| UNITED AUTOMOBILE, AEROSPACE | ) | |
| & AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Charles R. Norgle, District Judge

Before the court is Defendant UAW's Motion to Dismiss or, in the Alternative, for Summary Judgment. For the following reasons, the Motion to Dismiss is denied, and the Motion for Summary Judgment is granted.

**I. BACKGROUND[1]**

**A. Facts**

Plaintiff Cozine Stewart ("Stewart") began his employment at Navistar International Transportation Corporation ("Navistar") in 1968. As an employee of Navistar, Stewart was a member of both Defendant International Union, United Automobile, Aerospace & Agricultural Implement Workers of America ("International UAW"), and United Automobile, Aerospace & Agricultural Implement Workers of America, Local 6 ("Local 6"). Local 6 is not a party to this

---

[1] The court takes the facts in this case from the parties' Local Rule 56.1 Statements. Disputed facts are noted within the text.

1

litigation. International UAW and Navistar are signatories to a collective bargaining agreement ("CBA") covering the terms and conditions of employment at Navistar.

Due to ongoing absenteeism problems, Stewart was required to sign a Substantiation Policy Letter on March 9, 1998, which required, *inter alia*, that Stewart report any absence to Navistar prior to his scheduled starting time. Stewart failed to report for work at Navistar on January 25-29, 1999. Stewart insists that he called in to report his absences prior to each shift, but Navistar terminated Stewart for being absent from work for five consecutive days without reporting. The parties dispute whether Stewart's alleged threats towards a supervisor contributed to his termination. Stewart was discharged on January 29, 1999.

Pursuant to the CBA, a Discharge Hearing was held for Stewart on February 23, 1999. Several union officials were present at this Hearing in order to represent Stewart. The parties disagree as to whether these union officials were representatives or employees of either the International UAW or Local 6. Defendant asserts that these union officials were representatives of only Local 6, while Stewart argues that they represented both International UAW and Local 6. At any rate, during this Discharge Hearing, a Navistar Senior Labor Specialist suggested to Stewart that Stewart enter a substance abuse program through Navistar's Employee Assistance Plan. Stewart, who admits that he has used cocaine occasionally over a period of years prior to his termination, agreed, and completed a drug rehabilitation program at the River's Edge Hospital. Following completion of this program, Stewart applied for reinstatement at Navistar.

On May 21, 1999, Stewart and representatives from Local 6 met with Navistar management to discuss whether Stewart would return to work. During this meeting, Navistar agreed that if Stewart could pass a drug screen, it would consider reinstating Stewart. Both urine

2

and hair samples were collected from Stewart. Stewart's urine sample was negative, but his body hair screen was inconclusive, with an "indication of cocaine." Def.'s Ex. C, at 3. Stewart agreed to a retest. The retest, which used a sample of Stewart's head hair, was positive for cocaine. Navistar decided not to reinstate Stewart.

Local 6 agreed to continue to represent Stewart, and, during a meeting with Navistar, negotiated what the parties style a "Last Chance Agreement" (the "Agreement"). The parties executed this Agreement on August 22, 2000. Pursuant to this Agreement, Stewart, Navistar, and Local 6 agreed that Stewart would be reinstated if he met the following conditions: Stewart must pass a drug screen during the week of August 21, 2000; Stewart must pass a drug screen every quarter during his employment at Navistar; all absences and tardiness must be reported prior to the start of Stewart's shift and substantiated in writing; if the absence or tardiness is attributed to illness, a physician must substantiate this in writing; failure to adhere to these conditions will result in immediate termination. Def.'s Ex. E. Stewart agrees as to the contents of the Agreement, but asserts that the International UAW was involved in negotiating the Agreement, along with Local 6.

On August 22, 2000, pursuant to the Agreement, Stewart reported to the Westlake Hospital for a drug screen. Both urine and hair samples were again collected from Stewart. The urine sample was negative, but the hair sample was positive for cocaine. Stewart's hair was retested on September 1, 2000, and the results were again positive. Stewart was not reinstated at Navistar.

Stewart then contacted International UAW concerning his situation. International UAW advised Stewart that Local 6, not International UAW, would be handling the grievance

procedure. Local 6, however, was unable to persuade Navistar to reconsider its position, and Navistar ultimately denied Stewart's grievance. The grievance was ultimately referred to arbitration, pursuant to the CBA.

The parties agree that International UAW handled Stewart's arbitration procedure, including the arbitration hearing before Arbitrator William B. Ferguson. Stewart asserts that Local 6 representatives assisted in the arbitration procedure, and were present at the arbitration hearing. The Arbitrator ultimately denied Stewart's grievance, and upheld Navistar's termination of Stewart, based on Stewart's violation of the Agreement.

> [Stewart] having failed to pass the drug screen, he was properly discharged under the Last Chance Agreement which controls in this case. By that agreement, the Union agreed that failure to pass the drug screen constituted a proper ground for immediate discharge. The inescapable conclusion is that the grievance must be denied.

Def.'s Ex. C, at 11.

## B. Procedural History

Stewart filed his initial Complaint on May 28, 2002. Stewart named the International Union and Navistar as Defendants. This Complaint alleged that the International Union breached its duty of fair representation to Stewart, and that Navistar discriminated against Stewart on the basis of his race. In a December 16, 2002 Minute Order, the court dismissed Navistar as a party to this case on the grounds of res judicata. On December 10, 2004, Stewart filed his First Amended Complaint, in which he named only the International Union as a Defendant. In this Complaint, Stewart alleges only that the International Union breached its duty of fair representation.

On February 14, 2006, Defendant filed its Motion to Dismiss, or in the Alternative, for Summary Judgment. Stewart filed his Response to this Motion on May 26, 2006. Defendant filed its Reply on July 27, 2006. The Motion is fully briefed and before the court.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss

International UAW asserts that Stewart's Amended Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 4(m) and 41(b) for insufficiency of service of process. Defendant asserts, and Stewart does not dispute, that Stewart failed to effectuate service on it until December 13, 2004, more than two and a half years after Stewart filed his Complaint.

Rule 4(m) of the Federal Rules of Civil Procedure requires service of summons and the complaint within one hundred and twenty days of filing the complaint. If service is not made within that time frame,

> [T]he court, upon motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service to an appropriate period.

FED. R. CIV. P. 4(m). This Rule was promulgated in order to "force plaintiffs' (more realistically their lawyers') diligence [in service] in order to preserve causes of action against limitations problems." Coleman v. Greyhound Lines, Inc., 100 F.R.D. 476, 477 (N.D. Ill. 1984). In addition, the court "has the discretion to dismiss a case with prejudice 'for failure of the plaintiff to prosecute.'" Dewey v. Farchone, 460 F.2d 1338, 1340 (7th Cir. 1972) (quoting FED. R. CIV. P 41(b)). "Failure to serve process within a reasonable time may amount to want of prosecution." Id.; see also O'Rourke Bros., Inc. v. Nesbitt Burns, Inc., 201 F.3d 948, 953 (7th Cir. 2000) ("In

5

certain circumstances, a plaintiff's dereliction in not obtaining service may lead beyond Rule 4 and head off into territory covered by Rule 41(b)."). The court would therefore be within its discretion to dismiss this case pursuant to Rule 41(b) due to Stewart's failure to serve process on Defendant for such a long period of time.

However, dismissal for want of prosecution "is a harsh sanction that should be reserved for 'extreme situations.'" Beyer v. Cormier, 235 F.3d 1039, 1041 (7th Cir. 2000) (quoting Kruger v. Apfel, 214 F.3d 784, 787 (7th Cir. 2000)); see also GCIU Employer Retirement Fund v. Chicago Tribune Co., 8 F.3d 1195, 1199 (7th Cir. 1993) ("The drastic nature of a dismissal with prejudice requires the action to be used only in extreme situations, when there is a *clear record of delay* or contumacious conduct, or when other less drastic sanctions have proven unavailable."). Here, (1) Defendant has filed an Answer, (2) the parties have made disclosures, (3) both sides have produced documents, (4) Plaintiff has been deposed, (5) Defendant's representative has been deposed, and (6) Defendant has moved for summary judgment. The court determines that at this stage of the game, dismissal for want of prosecution is an inappropriate remedy for an admittedly lengthy delay in service of process. Defendant's Motion to Dismiss is therefore denied.[2]

## B. Defendant's Motion for Summary Judgment

### 1. Standard of Decision

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield

---

[2] To the extent that Stewart is pursuing a Title VII claim against the International Union, any such claim is barred, as Stewart admits that he never filed a discrimination charge with the EEOC or the Illinois Department of Human Rights.

6

v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. FED. R. CIV. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When the defendant moves for summary judgment, the court must view the record and all inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## 2. There is No Genuine Issue of Material Fact as to whether the International Union Fairly Represented Stewart

Defendant makes several assertions in support of its Motion for Summary Judgment: (1) Stewart has sued the wrong party, (2) Stewart's claim is time-barred, (3) there is no evidence that Defendant failed to fairly represent Stewart, and (4) there is no evidence that Defendant discriminated against Stewart because of his race. Because the court determines dispositively that there is no genuine issue of material fact as to whether the International Union failed to fairly represent Stewart, the court does not reach Defendant's other assertions.

It is well-established that "a labor organization has a statutory duty of fair representation under the National Labor Relations Act . . . ." Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 73 (1989). This duty of fair representation "obligates the union 'to serve the interests of all of its members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" NLRB v. IBEW, Local Union 16, 425 F.3d 1035, 1039 (7th Cir. 2005) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). A union breaches this duty "when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." Marquez v. Screen Actors Guild, 525 U.S. 33, 44 (1998); see also Nielsen v. Int'l Ass'n of Machinists & Aerospace Workers, Local Lodge 2569, 94 F.3d 1107, 1113 (7th Cir. 1996) (quoting Vaca, 386 U.S. at 189).[3]

---

[3] Typically, the district courts do not have jurisdiction over suits based on the NLRA. "[A]s a general matter, neither state nor federal courts possess jurisdiction over claims based on activity that is 'arguably' subject to §§ 7 or 8 of the NLRA." Breininger, 493 U.S. at 74 (citing San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245 (1959)). However, the Supreme Court has indicated that "Garmon's preemption rule does not extend to suits alleging a breach of the duty of fair representation." Id.

8

In this case, there is simply no indication that the International Union breached its duty to fairly represent Stewart. The parties dispute whether the International Union participated in the negotiation of the Last Chance Agreement. The International Union asserts that it was not involved in these negotiations, while Stewart insists that it was involved. The undisputed facts, however, indicate that Stewart had been terminated from his position at Navistar, and that whoever negotiated this Agreement on Stewart's behalf acted in Stewart's best interests by giving him, literally, one "Last Chance" to regain his position. The parties agree that two International Union officers represented Stewart at his arbitration hearing. At this hearing, the International Union made, *inter alia*, the following reasonable arguments: that Stewart properly reported his absences; that Stewart produced legitimate medical documentation for his absences; that Stewart had successfully completed a drug rehabilitation program; and that Navistar did not discuss the use of a hair sample in the drug screening. The arbitrator, however, ruled against Stewart, finding that he had violated the terms of the Agreement.

When evaluating whether a union has violated its duty to fairly represent a member, the court must make separate determinations as to whether the union's actions were "arbitrary, discriminatory, or in bad faith." Garcia v. Zenith Elecs. Corp., 58 F.3d 1171, 1176 (7th Cir. 1995). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." Air Line Pilot's Ass'n v. O'Neill, 499 U.S. 65, 67 (1991) (internal citation omitted). Assuming Stewart's assertion is correct, the International Union participated in the negotiation of an Agreement whereby Stewart was offered a "Last Chance" to return to work, provided he met certain conditions. It is undisputed that the International Union then sent two

officers to defend Stewart at his arbitration hearing after Stewart violated the terms of that Agreement. These actions can hardly be termed "irrational." See id. Nor is there any indication that the International Union somehow "singled [Stewart] out for mistreatment." See Griffin v. Air Line Pilots Ass'n, Int'l, 32 F.3d 1079, 1083 (7th Cir. 1994). There is also no indication that the union representatives acted in bad faith by not pursuing this matter on Stewart's behalf, or placing "their personal interests ahead of [Stewart's] interests." See Ooley v. Schwitzer Div., Household Mfg., Inc., 961 F.2d 1293, 1303 (7th Cir. 1992). In short, Stewart has presented the court with no evidence that the International Union's actions were "arbitrary, discriminatory, or in bad faith." See Marquez, 525 U.S. at 44. Defendant's Motion for Summary Judgment is therefore granted.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied, and Defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

Dated: August 9, 2006